Circuit Court of Appeals. We appreciate everyone's courtesy and flexibility in helping us to find a good time for argument, and we call the case of In Re. Bryant, petition for rid of mandamus, and we'll begin with Mr. Matheny. You've got a tough standard of review for that. May it please the court, and thank you for hearing us on short notice here. Twenty-three years ago, in the FDIC case, a magistrate ordered three high-ranking officials' depositions and committed two mandamus-worthy errors. The first error was that the magistrate made no attempt to find whether or not exceptional circumstances justified the depositions. And then the second error was that there was no basis from which the court could have found exceptional circumstances justified the depositions. And the second part of that analysis is key. It's part 3B in the FDIC opinion, because that's where this court identified what's necessary for a plaintiff or a party seeking a high-ranking official's deposition to make a strong showing of exceptional circumstances in that regard. But doesn't this really all come down to whether the testimony is available from another witness or other witnesses? Isn't that really the crux of the case? I think that it's a big part of it. I certainly am not conceding that there's not a problem with the heightened relevance or the centrality of the issue that's here. But yes, the other sources is a problem. And if you go and you look right at the magistrate's order, one problem with it is that the test that the magistrate set up, if you apply it, and the magistrate's order at page 7 said, regardless of what other people may claim was said in communications with Sanji, the chief of staff, plaintiffs are entitled to discover this information from Governor Bryant's staff member who has personal knowledge on the subject. What he was saying and what he found was that when a high-ranking official has a conversation that's allegedly relevant to something, that you don't have to go ask the other persons who participated in the conversation. You just go right to the high-ranking official. And if you look at the examples... But Snyder was your 30B6 witness, right? That's correct, the deputy chief of staff. He testified that he didn't know in response to several of the questions that are referenced on pages 6 and 7 of the magistrate judge's order. He testified, I don't know, but it's not as simple as that. And that's why we reprinted the actual testimony there and took each one apart in our petition. And if you look at it, it's a summary of exactly what it is that were the issues that Mr. Snyder, what was found that he couldn't testify to, the minute details that were involved. Let me go back one step before. Do we know, I assume that we have identified these alternative witnesses, do we know if they're available? And by available, I mean not just physically available, but legally available, or do they fall under the same cloak of immunity for lack of a better word? Will they also be met, an attempt to depose them, also be met with an objection by the state? Well, there's five. There's five that were at issue. There's the Madison County Board of Supervisors' attorney. Don't represent Madison County, don't represent her, in my opinion. She's not a high-ranking official, so no, as to her. As to the legislators, I had, and this was an argument that was raised, I think, for the first time in the petition, but this issue about what's going on with the legislators and trying to get information from them. It's a key point. It's something that I had on my list that I needed to bring up. What's at issue with the legislators is this, and it's an appeal, the cause number is cited in our brief. They served document subpoenas on legislators, eight of them. Those were only document subpoenas. They haven't said that we want to take their deposition. They haven't tried to get information from them elsewise. It's purely about documents there. They have won twice on that already. The magistrate said that they get the documents in a privilege log, and the district judge said they get the documents in a privilege log, and now the legislators, who are represented by their own counsel, have argued on appeal that obviously that the lower court was wrong, but that avenue has not been exhausted. It's only as to documents, and when that's resolved, who knows what the issue will be about taking their depositions. I think that that applies. We had five, the supervisor attorney, then there's three, and then there's one legislator that was an opponent of the bill, and there may have been a conversation with them. Mr. Snyder couldn't remember if there was one in mid-March. There's no reason that they can't go talk to legislators that are on their side of this issue. They certainly haven't shown anything to show that they can't. FDI seems to be universally followed. Both parties, the magistrate here, even recently in the census litigation, the Solicitor General, urges FDIC at the Supreme Court. So I don't see that our existing law that anybody's saying it's the problem, or at the same time, when I read FDIC, I don't read heightened, essential, or critical. And when I look at the district courts in the Fifth Circuit since 1995, they're focusing on relevance. But at the same time, it doesn't seem like it gives me an exact formula. So correct me if I'm thinking incorrectly. First, you'd have to show high-ranking official. It doesn't sound like they're disputing that as to your client. They did initially, but they aren't anymore. But that's not before us. Then you'd have to show that as to the high-ranking official, the deposition isn't burdensome. And it doesn't sound like you're contesting that two hours, two issues is that much. But maybe we have some room to discuss there. Third would be relevance. I don't see that at this stage to be implicated. But the big one I would agree, and the question at least presented to you is, is there another source? Is there another source? Yes. Therefore, it wouldn't be necessary. But then we run into the problem of the legislators are stating they aren't a source. And in a conversation, they're just two people to that conversation. Well— And I'll put it now, culminate in a long-winded question. Do you have authority that this court or other circuits, and put aside the Eighth Circuit that does seem to require essentiality, this court or other courts, will grant mandamus to require intermediate steps, specifically written interrogatories? That wasn't done here as to your client. It could be done. It's less burdensome. It implicates the shield less. What's your thought on that? Let me unwind two parts of it. With respect to the Eighth Circuit, that's the Eighth Circuit citing FDIC. But you don't see those three terms. You don't see essential, critical, or heightened anywhere in FDIC, correct? That's correct. Okay. But with respect to the alternative source and going to the written questions instead, the Ninth Circuit in CLEP, Kyle Engineering versus CLEP— That was me. I move around too much. Judge Clement says, stop lifting your legs and sitting on your legs. She's going to crack up when she hears I did this. Oh, how awful. Pretend I didn't do that. I'm so sorry. I'm so embarrassed. Apologies. I think—and I don't have an exact count. There's eight or nine circuits that have looked at exceptional circumstances, high-ranking official. The two earliest ones are the CLEP case from the Ninth Circuit. I think that there is—if you look in our briefs below, there's a string site that has all of the courts. But there's CLEP in the Ninth Circuit that went—you've got to do the written questions route. There is the Sweeney versus Bond case from the Eighth Circuit that was directly trying to depose the governor and the high-ranking official privilege applied. Then you had the cluster of cases that are cited in our brief that are the federal cases, the Kessler, the Holder, which is the Eighth Circuit case, and then you had FDIC. Then you have some more recent cases, the First and Second Circuit cases, Bogan and Letterman. Then I would have to say, just because we're talking about other circuits' cases and everything and it's something that came up since we filed our petition, I think everybody knows what's been going on with the Commerce Secretary issue in the New York case where the Commerce Secretary was ordered to give his deposition. In that particular district court opinion applying the Second Circuit law, they were looking to whether or not the issues that they were going to depose the Commerce Secretary about were central to the case and then also whether alternative sources has been exhausted. In that particular case, which I think is the example of how this high-ranking official privilege worked, they covered the waterfront. They deposed people from DOJ. They deposed witnesses. I mean, scores of depositions before they could get to the high-ranking official's deposition. In this case, what we have, and this is important with respect to alternative sources, they've taken Mr. Snyder's deposition, two other depositions. One was a Madison County 30B6 where they didn't even bring up anything about whether or not anybody had any discussions with, from the governor's office, had any discussions with anybody from Madison County. They've taken three depositions total. They've served nine interrogatories that are essentially boilerplate, five requests for production, and ten requests for admission. Here we are. We're sitting in this two-and-a-half-year-old case already. It's not going anywhere. There hasn't been an exhaustive search for all this other information. They take a 30B6 deposition. There's a few I-don't-know answers to questions, and then that gets hoisted up as a reason to depose the governor's chief of staff about an idea that he had in 2014 that was actually about a state agency becoming responsible for the airport. That's the way 30B6 works, isn't it? I mean, you tell them here's a witness that can testify to the things that you've listed in the 30B6 request, and then the witness says, I don't know or I don't remember. What are they supposed to do? Well, one thing they could have done and that they didn't touch with is there's never been any contention that Mr. Schneider was an unprepared witness or that he was nonresponsive or that he didn't give enough information. I think one remedy there would be to go back and look at what requires to resume the 30B6 deposition. If his testimony was so off-base, which we don't think it is, when you look down into the details, which I think you have to do here. His answer was that he was not aware, he didn't know at the time of the deposition, but that he could go back and find out that information and present it. Is that fair? That wasn't his answer, but he could certainly do that. We could do that. In fact, that brings to mind, because you brought it up, Judge Engelhardt, I think a great example of how the high-ranking official privilege works and the methodology and the care that should be taken is actually a good example is one of your cases when you were on the district court dealing with the FEMA MDL litigation. You may or may not recall, but there was Admiral Johnson from FEMA who the plaintiffs were trying to take his deposition. The first thing you did was said, I'm not going to decide anything now. You held him in abeyance and made him go take other people's depositions. Then when they came back, you required him to tell you, hey, what is it that is the essential parts of your case or the critical parts of the case? They came back with four things. You looked at that and you said, well, one, two, and three, no, that's not relevant. That's not critical here, but four is. Then you turned around and you said, I'm not going to make him sit for his deposition. Here is the question. He has 15 days to answer it under oath, and he turned it in. I don't know what happened after that. I didn't see it in the history of the order, but I assume that that put the issue to bed. If what we're talking about here are five details, and this is what the magistrate said we're talking about, if we're talking about five details about possible conversations that may or may not have actually taken place, I don't see how taking the written question route will not work to resolve the issue. Some of the questions, it was just a time frame issue. Was there a conversation in mid-March? I don't know. He didn't know if there was a conversation in mid-March. Other questions were, were there discussions with sponsors of some other bill that went through the legislature that wasn't even listed on the deposition topic list of something that Mr. Schneider had to prepare for? He said, I don't know. He could easily go back and we could furnish that information. So your argument is that that one is outside the scope of the 30B6 notice, that question? I think it certainly was, and I think Mr. Schneider answered that question anyway. If you look in our petition and you see where Judge Ball identified Mr. Sanji's 2014 idea as something he found significant, the rest of our brief and the deposition testimony cited in there, I mean, Mr. Schneider said there were not discussions with legislators before early January 2016. So they come back later and say, were there discussions with legislators before early 2016? And he says, well, I don't know. It was outside the scope of the deposition notice, and I frankly think he was caught off guard on that. As to your other source argument, do you claim the district court made a legal error saying we don't even need to look, or are you claiming that there's a clear error of fact saying there is no other? What's your argument as to where the indisputable, patently obvious mistake occurred? Well, I think that there's both. And the reason that I think that there's both is, I don't think you get to just default to this rule that if there was a conversation with two people that they're just automatically entitled. You defeat the other source by saying, well, you're entitled to know what he said was said, not what he said was said. An example is, if you take this rule or this principle that was cited here, if a high-ranking official gave a speech to 300 people and you applied this to that, you would say you don't have to go depose the 300 people about what was said. You get to ask him. Is it possible the district court, sort of having had the legislator's opposition, knew that there was no other source because they were opposing it likewise? Well, he overruled their objections to it, of course. But then there's also my point that I said earlier. The legislator issue, that's just about documents. They've never broached the issue about whether or not legislators can be deposed about any of this stuff. And they've won twice. And if they broach that issue, it sounds like the legislators will probably lose. But that's something that's on appeal in the other case about whether or not they have a privilege for third-party communications. And then there's an issue about whether or not their internal communications would be subject to legislative privilege. So I think what we're talking about here are third-party communications that the district court has already said they have to turn over documents on. I'm almost out of time, but I have saved some time for rebuttal if there's no further questions. Do you know of, I looked, do you know of any Fifth Circuit mandamus since 1995 where we have mandamus to district court for compelling a high-ranking official? Other circuits have. Do you know of any? I don't know of any in the Fifth Circuit. I think there have been two very recently. If it might be of assistance to point that out for myself. So you say you do think we've done it two twice recently? No, not the Fifth Circuit. I think circuits have recently. No, lots of circuits have. I was just intrigued that I couldn't find. But that's also hard to search for, which is why I'm asking you. Well, it's a rare, if I may, Your Honor, it's a rare issue that rarely comes up. It's something that's very important. And it seems to me that when you look at the fact that pretty much, until this Commerce Secretary case, every circuit that ever looked at a mandamus had mandamus to the district court on it. That's the way that, by happenstance, this sort of thing has to be policed. Yeah. Thank you. All right. Thank you, Mr. Matheny. And you have saved time for rebuttal, Mr. Rossani. Good afternoon, Your Honor, and may it please the Court. With all due respect to my friend on the other side, the Governor's argument is a bait and switch. The Governor continues to refer to the exemption at issue in this case as being a privilege when it is not. It is a general rule subject to exceptions. He seeks this Court's relief through mandamus, which, as this Court has mentioned, is a drastic and extraordinary remedy to prevent his Chief of Staff, a person who he identified in his initial disclosures as having discoverable information, from having to sit for a two-hour deposition that the magistrate judge specifically limited to two topics that were relevant to the claims in this case. Well, the two things are not mutually exclusive, I assume you would agree. That is to say, if they're going to be truthful about disclosing who has relevant information, they might well candidly disclose the name of a person whom they later will claim enjoys a privilege. That's correct, Your Honor, but in addition to the disclosures, which essentially says this person has discoverable information that we intend to use to defend against the claims you've advanced. In addition to that, though, we have the fact that in 2014, Mr. Sanji conceived of the idea of an memorandum. We know that seven months later, in January of 2016, the State Senator, who announces that he intends to propose a bill to take over the airport, then contacts Sanji before the bill is ever put on the floor and the two discuss the concept. From that point forward, we know that Sanji continued to talk to the legislators who were You take that knowledge and you look at the claims in this case, which there's a Section 87 claim under Mississippi's Constitution. It's a special law claim which essentially says this law was passed to benefit some to the exclusions of others. Motivation for the law is relevant to that claim. You look at the federal equal protection claim. It's a race-based equal protection claim. That claim requires us to prove discriminatory intent or purpose. And to do that, we have to show that racial animus was a motivating factor for this law. And the Supreme Court, ever since Arlington Heights, has made clear that that inquiry is a sensitive inquiry into both direct and circumstantial evidence that may be available. Is it your position that you can depose the Chief of Staff about all other questions? In other words, open season? Or do you want to go and depose him about the very questions on the 30B-6 that the designee couldn't respond to? That's an excellent question, Judge Englehardt. And I think both we and the magistrate judge recognize that no, we're not trying to depose this gentleman for every topic out there. The magistrate judge's limitations affected us just as much as they affected him. You can't lose sight of the fact that the motion for protective order that the governor filed was granted in part and denied in part by the magistrate judge. And in denying it in part, he limited our examination to two topics. Sanji's conception of the airport takeover and Senate Bill 2162 itself. Two topics, but not to the five questions that appeared on the transcript. Is that correct? That's correct, Your Honor. If he limits it to two topics, that's presumably a whole lot more than just the five questions on the 30B-6. That's correct, Your Honor, but I urge the court to look back one last time at that order by the magistrate judge because the five topics, the argument that I just heard about the five topics is a red herring. The five topics discussed in his order were solely establishing his personal first-hand knowledge, which is what the magistrate judge knew he had to do in this case. Once he established that, he then looked at the circumstances and the burden that may be cast upon this gentleman and that's why he limited the topics. He not only limited them substantively, though, he also limited it to the year 2014 until the day the bill was signed, the relevant time period. So when you take those facts into consideration, on its face it may seem broader than the five topics areas, but again, those five topics areas were solely intended to demonstrate the personal first-hand knowledge. That's why we argued them before the court below. Now, there's argument here that... Sorry. If it isn't burdensome with that limitation and the relevancy standard seems open, at least to the suggestions you're making, that still leaves us with alternate sources. And the magistrate was very dismissive verbally that there was even a need to look for alternate sources. And to me that sort of subsumes the female litigation case law that was described, which is let's get some written interrogatories first. Let's make magistrates and district courts do a little more probing rather than jumping right to deposition of a high-ranking official. Why isn't that the way to give meaning to the word extraordinary circumstance? Well, in response to that, Your Honor, I would begin by saying this is a responsibility that's a core duty of a magistrate judge. It's resolving discovery disputes. He resolved the discovery dispute here informed by his knowledge of the parties, the non-parties, the disputes going on. Now, I certainly don't want to drift too far outside the record, but I can tell the court, we have talked about it, it is within the record that the legislators have vehemently opposed our document subpoenas and they've landed us in this court. It's highly unlikely that the legislators are then going to turn around and say, well, you can depose us for seven hours under the federal rules. Okay. Well, you know the record really well. There was no motion to depose them ever yet, and as to their efforts to protect from subpoenas, the magistrate ruled against it. So the magistrate, when ruling on the issue before us now, clearly thought the legislators were available and just orally said that's just not necessary. You're entitled to the high-ranking officials' thoughts. That does seem very hard to reconcile with the case law that's emerged as to another source or at least written interrogatories first. And I agree the case law takes the direction that it takes, but just two points in response to that, Your Honor. My first would be that, as the magistrate judge pointed out, as he relied on, the fact that the governor identified Sanchez being someone that he would use his knowledge to defend the claims. And secondly, it's the sensitive inquiry that the Supreme Court spoke of in Arlington Heights that's required for these claims. That is what, in addition to the specific facts of this case, that is what distinguishes this case from those other circuit precedents. You will not see another circuit court addressing an equal protection claim in this context where a high-ranking official has been identified as having knowledge, where we've gathered evidence from the source that we've been able to talk to, and that evidence has shown that he has personal first-hand knowledge. That source, the 30 v. 6 witness, could not provide all of the information that was necessary, and the next logical step for us was to go to the legislature. We have tried that. We are now in this court with that. So naturally we go to the source itself, the person who has the first-hand knowledge. And that really was part of the magistrate judge's reasoning, was that he is the person within the governor's office who has personal first-hand knowledge of what he knows. Now, with respect to the governor's challenge as far as the legal standard, I get the sense that he's kind of not really addressed that here today, but I will say that he's got to show, as this court in Beasley pointed out, he's got to show that it's a clear and indisputable mistake of law by the judge. I certainly don't think, given the precedent in other circuits, given this court's precedent, that you cannot say that here. Just one word about FDIC. I know that at the beginning of his examination that case came up. FDIC is a materially different situation than what we had before this court. There the district court failed to even apply what this court called in 1995 was a well-settled rule. It just failed to apply it. And if you look at the guidance that was provided in FDIC, and you compare that to the magistrate judge's order, he went right through each of those points. He addressed the substantive burden. He addressed the high-ranking status. And he also addressed the substantive need for the deposition, which we've talked about, the personal first-hand knowledge. Now, with respect to his challenge to the factual findings as applied to the law, Your Honors, again, as we argue in our brief, the factual finding here is that Songi has first-hand knowledge, personal first-hand knowledge that cannot be obtained from other sources. Those are the factual findings. And to prove, to warrant mandamus on that ground, attacking the factual findings applied to the law, as this court knows, he has to show a clear abuse of discretion, leading to a patently erroneous result. FDIC does not sanction this court coming behind a district court after it has performed the analysis, the exceptional circumstances analysis, and then reevaluate, well, how was that basically critiqued in the analysis? How did it take place? That would run afoul of what this court spoke of in Volkswagen as being substituting this court's judgment for that of the district courts. Now, what happened in FDIC was that there was a clear abuse of discretion. This court plainly set that forth towards the end of its opinion. That was a clear abuse of discretion not to apply the standard. You don't have that here in this case. And this court saw that as well in Lloyd's Register of North America where there was an unexplained denial of motion without any weighing of the relevant factors. Again, you don't have that. And it's our position that because you don't have a clear abuse of discretion, there's no need to evaluate whether it was a patently erroneous result. When you read FDIC, you can see that the court clearly found a clear abuse of discretion, but I think the next step was, okay, was it a patently erroneous result? And that's why the court went into the factual analysis. Well, so the key language, though, from FDIC is still the language that says where the testimony is available from an alternate witness. Let's take a hypothetical case in which it's obvious that the testimony is available from an alternate witness who is readily available and fully knowledgeable on the subject. That's not your case, you would say, but let's just assume that. Then in that case, the standard would always be met, wouldn't it? It would be a clear abuse of discretion. Excuse me. In your hypothetical, the district court would have found you still don't have to go to that other source? Right. I'm not sure I entirely follow that. I would say that if there is another source, then that's correct. The rule is personal first-hand knowledge not available from other sources. And so, yes, naturally they would need to go towards that other source. That's certainly not what we have here. And I think the 30B6 witnesses' testimony speaks for that. I mean, I guess the point of my question is the same question, the first question I ask Mr. Mufini, which is doesn't this controversy really boil down to whether testimony is available from an alternate witness or witnesses? Well, I don't know that it does, Your Honor, and I say that because I don't think there is another available witness. I certainly don't believe the legislators are just in the disputes that we've had with the legislators in court, which, again, the magistrate judge was aware of those disputes. But just also the fact that Sanji had such relevant knowledge from the governor's office's standpoint. As I mentioned, he conceived of this idea from the governor's standpoint. He continued to stay involved with it. He talked to the senator who sponsored the bill before the bill was put on the floor, continued to stay involved with it. And so I think really it's certainly an issue. The other sources, I agree, it's certainly an issue. I don't think they've shown that there's another source here. But I think another issue that the court, I hope the court doesn't lose sight of, is just that the exemption here, the focus is on the individual. This is not a situation where you have, for example, the attorney-client privilege where the nature of the information is protected and once it comes out of the bottle, that protection is destroyed forever. This is a situation where the focus is on the individual and his time and his duties. The district court took that into account. I think that's clear in his order that he took that into account and he limited the deposition to the two relevant topics that this gentleman has personal first-hand knowledge of and restricted it to two hours. And so I think that... So the chief of staff, in theory, if he had to be deposed, could still assert executive privilege if it exists as to refusing to answer. To the extent it exists, yes, Your Honor. And I think the magistrate judge in his order, he specifically says we can question him about non-privileged communications and his actions regarding the concept and the bill. So that's correct, Your Honor. But when we look at the challenge to the factual findings as applied to the law, when we look at that, I stress the magistrate judge's order because the magistrate judge very carefully went through each of the three factors that I mentioned earlier from FDIC. Of course, he started with the fact that the governor disclosed this gentleman as having knowledge he would use to defend his claim. If you were in the Eighth Circuit, would you accept that sufficient essential relevance wasn't found by the magistrate? You've been able to fill it in now as to the Mississippi claim and the equal protection claim, but I didn't really see that articulation by the magistrate. So if we were in a circuit or the one that does say it's got to be essential, mandamus would be appropriate? No, Your Honor, it would not. And I say that because, again, I call the court back to Arlington Heights and the sensitive inquiry that is necessary in this case. And part of that sensitive inquiry is to look at the specific context leading up to the bill that's being challenged. Another part of that inquiry is the historical background leading to the bill. And here, that's exactly what Sanji has knowledge of. He conceived of the idea in 2014. He discussed it.  He discussed it with the sponsor of the bill before it was put on the floor. And then he stayed involved. And so I think this is exactly the sensitive inquiry. I'm going to push back on one thing. The word extraordinary, it isn't just a discovery task. I mean, the word everyone accepts that what's the guiding description from the Supreme Court is it's got to be an extraordinary circumstance. So, yes, liberal is the discovery, but we've, you know, has to. And, therefore, why wouldn't intermediate? You heard him. Maybe here's the question. What about his statements, the Klepp description, the various other circuits that says not even other sources, just intermediate steps towards this source? There's some appeal to that. Well, the only, my response to that would be, Your Honor, that I call the court back to the purposes of this exemption. It's focused on the gentleman's time and responsibilities. And because the district court limited this deposition to two hours over two topics, I don't see where. I don't think that's quite right. I mean, the purpose of this isn't just don't waste time. It's you can't have every single lawsuit anyone wants to file mean that high-ranking officials have to stop. That's got a chilling component rather than just a time component. I think it's more than that. So what's either the pragmatic or legal argument against saying first interrogatories to Sanji? You get your interrogatories. He answers. And the lower courts have to do a little more work before it comes to us. What's the downside? I think the downside to that, Your Honor, would be the fact that we know that the 30B6 witness has testified. If I don't know, Sanji doesn't know. We know that Sanji was not under oath whenever he prepared the 30B6 witness. And as we cited in our brief, towards the end of our brief, it's that kind of circumstance where we should have the opportunity to face-to-face question the witness, try to refresh his recollections with documents in real time, and also assess his credibility. If he's going to say, I don't know, assess his credibility. Let me go back to something you said, and I want to ask about it in light of Judge Smith's question at the outset of your presentation. You said that Sanji was someone who has been identified by the state as someone who has personal knowledge that they will use to defend the case. Was he listed in the answer to an interrogatory, or was he listed on a witness list? I mean, the difference is, and I think Judge Smith, I don't mean to ask you the same question over again, but there's a difference between offering somebody up affirmatively as someone who we may or will call as a witness at trial to refute the allegations and elicit testimony versus someone who happens to have information but who nonetheless has the benefit of some limitations on their testimony. How was the name given to you, aside from you seeking to depose, how was the name injected in the case by the state, by the governor? Excuse me, Your Honor. They put us on track to Sanji beginning with their Rule 26 initial disclosures. They identified him as what? My next point was they identified any person listed in our documents. We looked in the documents they produced. He's all over the documents. There's emails with him on them. There's memorandum discussing his concept of the airport takeover. Identified as, you say, any person listed in the documents. What was the question that that is the answer to? What was the question? Please identify anyone who has firsthand knowledge, or was it please identify anyone that you may call as a witness? It's Rule 26, please identify anyone that has discoverable knowledge that you may use to support your claims or defenses. So they identify him. We find his name in the documents. And then we ask the 30B6 witness about these documents. He can't provide the complete testimony, as this Court is well aware. And to your point about the limitations without, you know, there not being limitations, that's exactly what the magistrate judge enforced on both parties. You know, we lost a little bit and he lost a little bit. He placed specific limitations on what we could ask this high-ranking official. Now, we did dispute his high-ranking status below, and we certainly think this Court can deny the petition on any basis. And I think certainly this Court could review the record and make the finding that this gentleman is not a high-ranking official, although we didn't raise that in our brief. And just, if I may, just to briefly conclude, Your Honors, the magistrate judge, you know, again, his core function is to resolve discovery disputes. And the magistrate judge in this case applied this Court's precedent in FDIC to find exceptional circumstances existed. And we ask the petition be denied. All right. Thank you, Mr. Morsani. Mr. Matheny, you've saved time for rebuttal. Thank you, Your Honors. And let me cut straight to that last point that has been talked about with this identifying Mr. Sanji and discovery responses. First of all, in FDIC, they specifically identified the directors there in response to an interrogatory question. This is nothing like that. There were initial disclosures, and the initial disclosures said, persons who are identified in documents may have discoverable knowledge. You know what the documents were that were produced with the initial disclosures? It was everything that's on the legislature's website reflecting the legislative history of the bill, the bill that they've sued us over. That's 174 legislators who we identified. That's not identifying Joey Sanji. In our discovery responses to the boilerplate, tell us everybody who has knowledge about the subject matter of our claims, we had to do the same thing. We had to produce document after document after document. There's thousands of pages of documents that have been produced, including every document reflecting any communication from the governor's office here. We put the same caveat in our responses to the boilerplate interrogatory. Yes, Joey Sanji's name is on a few emails about, can so-and-so come in and get a meeting with the governor, and so on and so forth. But that's hardly identifying him as somebody who has direct personal knowledge of something that's relevant to the case. And we're not using him. It's not a sword and shield situation. We were trying to hide him now, and then we're just going to go to trial and whip him out. If you look at docket number 2591, it's Mr. Sanji's declaration. It's the declaration that says that he reviewed the 30B6 witness testimony, that the 30B6 witness testified accurately. He didn't have anything he could add to the responses. It also says in there, I will not be called at trial. This issue came up in the briefing. You would have to look in the briefing to see this. But this is another one of those things where the district court magistrate hasn't done enough work. If we were trying to use Sanji in this sword and shield sort of situation, the remedy would be as soon as we do put him on a witness list or we indicate that we're going to call him or something, then they can go take the deposition. There was a district court case, I can't call the name right off, where that very same thing came up. I haven't heard them push the sword shield. It sounds like they want him affirmatively. If he's the inception of the takeover idea and had racial animus in origin, they aren't saying, maybe I missed it, they aren't saying that their whole purpose of getting him is because they think you're going to ambush them with him. Well, and I missed it for two reasons, too. Number one is that we briefed this thing three times now. That's the first I've ever heard of any of this stuff is that Joey Sanji is a source of any racial animus. The second thing about it is when you were – I got – may I finish? Yeah, absolutely. I'm sorry. But the second thing about that is this is about the legislator's motives. And if you look at our petition and you see the only testimony in the record, you see that the testimony is that there's no connection between Sanji's idea about making a state agency responsible for the airport and what the legislators came up with independently. That's the testimony that they came up with independently and enacted in 2016, two years later. Thank the court for your time. All right. Thank you, Mr. Matheny. Your petition for rid of mandamus is under submission and court is adjourned.